```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF TEXAS

 3                        MARSHALL DIVISION

 4   PORTAL TECHNOLOGIES      )(

 5                            )(   CIVIL DOCKET NO.

 6                            )(   2:11-CV-440-JRG

 7   VS.                      )(   MARSHALL, TEXAS

 8                            )(

 9                            )(   JUNE 26, 2012

10   YAHOO! INC.              )(   10:00 A.M.

11                  MOTION TO TRANSFER HEARING

12        BEFORE THE HONORABLE JUDGE J. RODNEY GILSTRAP

13                  UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16

17   FOR THE PLAINTIFF:   (See Attorney Sign-In Sheet)

18

19   FOR THE DEFENDANT:   (See Attorney Sign-In Sheet)

20

21   COURT REPORTER:      MS. SHELLY HOLMES, CSR
                          Deputy Official Court Reporter
22                        2593 Myrtle Road
                          Diana, Texas  75640
23                        (903) 663-5082

24

25   (Proceedings recorded by mechanical stenography,
```

transcript produced on a CAT system.)

1                         I N D E X

2

3

4    June 26, 2012

5                                               Page

6        Appearances                          1

7        Hearing                              3

8        Court Reporter's Certificate         39

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                COURT SECURITY OFFICER:  All rise.

 2                THE COURT:  Be seated, please.

 3                All right.  This is the time set for hearing

 4   on a motion to transfer venue in the Portal Technologies

 5   versus Yahoo, Inc., case -- Civil Action 2:11-CV-440.

 6   There is also a pending dispute regarding the protective

 7   order the Court may take up secondary, but, first, we'll

 8   hear on -- we're here on the motion to transfer venue.

 9                Let me ask for announcements at this time.

10   What says Portal Technologies?

11                MR. DAVIS:  Good morning, Your Honor, Bo

12   Davis on behalf of the Plaintiff, Portal Technologies.

13   With me today is Mr. Steve Schlather, and he will be

14   doing the argument on the motion to transfer.

15                THE COURT:  All right, Mr. Davis.

16                And for Yahoo?

17                MS. WRIGHT:  Kristie Wright for Yahoo, Your

18   Honor.  Shawn Latchford and Jim Haltom are also here

19   today.

20                THE COURT:  And who's going to present the

21   argument on behalf of Yahoo, Ms. Wright?

22                MS. WRIGHT:  I will, Your Honor.

23                THE COURT:  Okay.  All right.  Ms. Wright,

24   it's Yahoo's motion to transfer, so we'll hear from you

25   at this time.
```

1            The Court's allowed each side up to 15

2    minute.

3            MS. WRIGHT:  Your Honor --

4            THE COURT:  It's up to 20 minutes, I

5    believe.

6            MS. WRIGHT:  Your Honor, I did not bring a

7    PowerPoint because I only have eight slides, but I do

8    have handouts.

9            THE COURT:  Feel free to approach.

10            MS. WRIGHT:  May it please the Court.

11            Kristie Wright on behalf of Yahoo.  We're

12    here on the motion to transfer.  Just for some

13    housekeeping purposes, we originally filed a motion to

14    dismiss and a motion to transfer, and those were

15    basically the same pleadings filed twice.  It was first

16    docketed No. 7 as the motion to dismiss and No. 8 as the

17    motion to transfer.

18            We later withdrew the motion to dismiss, and

19    so today we're proceeding on Docket No. 8, which is the

20    motion to transfer.

21            Yahoo is seeking to transfer to the Northern

22    District of California.  I know that the Court is

23    familiar with the standards set forth -- forth in

24    Volkswagen which allows the Court to transfer for the

25    convenience of the parties and witnesses, and in the

1   interest of justice, and just in order to streamline,

2   the parties agree that this action could have been

3   brought in the Northern District of California, so we

4   have that element taken care of.

5           And then when we get to the public interest

6   factors, the parties agree that three of those four

7   factors are neutral, that being the administrative

8   difficulties, flowing from court congestion, familiarity

9   of the forum with the law and avoidance of unnecessary

10  problems with the conflicts of law.  On Page 2, it shows

11  that those -- those are agreed that those are neutral.

12          So that leaves us with the four private

13  interest factors and one public interest factor being

14  the localized interest, and Yahoo submits that all of

15  those remaining factors weigh in favor of transfer and

16  that this case should be transferred to the Northern

17  District of California.

18          With regard to the private interest factors,

19  the first being the ease of access to sources of proof,

20  the majority of the sources of proof in this case are

21  more centrally localized in the Northern District of

22  California than anywhere else including the Eastern

23  District of Texas, making the Northern District a much

24  more convenient forum.

25          The witnesses in this case, the Yahoo

1   witnesses, are either located in Sunnyvale, California,

2   which is the Northern District, or in India, which

3   obviously is not connected to either of the districts.

4          Portal seeks to discount, though, the -- the

5   Indian witnesses saying that the -- they should be not

6   factored in, but the evidence is, and this is in our --

7   our materials by affidavit, that these witnesses in

8   India travel to the Northern District of California

9   regularly as part of their work, and that's clearly more

10  convenient for them.  They are able to work out of

11  California if they were there for purposes of trial

12  where they would not be able to do that as easily and

13  conveniently as they would in the Eastern District of

14  Texas.

15         Our briefing also reflects that there are

16  nonstop flights from India to the Northern District of

17  California where there are none to the Eastern District

18  of Texas.

19         The same is true of the third party

20  witnesses.  The inventor in this case is in Montana, as

21  well as some other fact witnesses associated with the

22  patent, and our briefing, we've demonstrated that there

23  are direct flights from Missoula, Montana, as well as

24  Bozeman, Montana.  Bozeman is the city where the

25  inventor lives, and Missoula is the closest airport to

1    Florence, Montana, where those other witnesses live.

2              This is in -- all in Exhibit 1 to our reply

3    briefing, which is Docket No. 32.  Obviously, that's

4    more convenient for them to be able to take a direct

5    flight to San Francisco than it would be to have to fly

6    at least one leg, possibly two, to Dallas, and then on

7    to either Shreveport or Tyler in order to get to

8    Marshall.

9              Importantly, there are no named witnesses

10   with any ties to the Eastern District of Texas, so there

11   are no witnesses where this is their home base and this

12   is where they live.

13             THE COURT:  No witnesses on Yahoo's side?

14             MS. WRIGHT:  None that I'm aware of other

15   than -- well, and the only named witnesses that have

16   Texas connections are the Plaintiff's counsels

17   themselves.  In the disclosures, they listed themselves

18   for attorney fee purposes, but other than that, there

19   are no named witnesses in the Eastern District --

20             THE COURT:  Talk to me, Ms. Wright, about

21   the distinction between the Northern District of

22   California on Yahoo's side and India.  There seems to be

23   some broad-brush language in the pleadings about what's

24   really done with regard to this accused patent in India

25   as opposed to the Northern District of California.

1          I mean, reading between the lines, it looks

2     like to the Court that probably more on Yahoo's side

3     with regard to this patent really is based in India than

4     it is based in the Northern District of California, but

5     if that's not the case, straighten me out.

6               MS. WRIGHT:  Currently, there are two

7     engineers that are overseeing the technology.  The

8     technology at this point with Yahoo is kind of on a

9     maintenance schedule.  There's not a whole lot being

10    done with it.  So the engineers that are, quote,

11    unquote, in charge of it are based in India.

12              We have -- since the briefing was filed,

13    we've filed disclosures and supplemental disclosures.

14    We named two individuals in India who are probably the

15    most day-to-day people at this point with the

16    technology.

17              Importantly, though, all of the finance

18    people, all of the marketing people, those -- those

19    folks are all in Sunnyvale, California, which is in the

20    Northern District, and they were also named in the

21    initial disclosures.

22              THE COURT:  But is it fair to say with

23    regard to the actual use and implementation of the

24    patented technology the people on Yahoo's side with the

25    most current day-to-day working knowledge are in India

1 and not California?

2 MS. WRIGHT:  I don't know that that's

3 necessarily fair.  I think that --

4 THE COURT:  Tell me what is fair.

5 MS. WRIGHT:  There are people in India.

6 There are also people in the Northern District of

7 California, and it's probably a 50/50 split.

8 In terms of the technical stuff, the

9 engineers, those folks are in India.  This product was

10 originally started in California when it was originally

11 designed and researched.  And then in 2007, it moved to

12 India.  So it started out in California.  The product

13 itself moved to India.  So the day-to-day people that

14 were assigned were in India, but there are also still

15 those folks in California who are at the next level, the

16 higher level.

17 THE COURT:  Okay.

18 MS. WRIGHT:  They're definitely involved in

19 the product and will be witnesses in the case.

20 THE COURT:  But the -- the product itself

21 and its day-to-day maintenance and continued development

22 have been in India for -- are you saying the last five

23 years, give or take?

24 MS. WRIGHT:  Correct.

25 THE COURT:  Okay.  Now, I have another

1   question for you.

2           MS. WRIGHT:  Okay.

3           THE COURT:  As I know you're aware, there

4   are two other pending cases by the Plaintiff in this

5   case against other Defendants that assert the same

6   patent and the same technology.

7           Tell me why the Court should not give weight

8   to the clear judicial economy that would be achieved by

9   keeping this case in this Court where the same patent is

10  going to be litigated in at least two other cases?  I'm

11  assuming many, if not all, of the same disputed terms

12  will have to be construed and the same type testimony to

13  develop the technology and the allegations of

14  infringement or invalidity will have to be heard.

15          Why -- why should the Court overlook that

16  compelling reason to not transfer the case to California

17  in light of those two other cases that are on more or

18  less a parallel track in this Court?

19          MS. WRIGHT:  You're correct, Your Honor,

20  there are two other cases.  I believe they were filed on

21  the exact same day, and it is the same technology that

22  is accused.  I believe that one of the other Defendants

23  has moved to transfer, and the other one has not.  So at

24  this point, we're looking at the convenience of the

25  difference between three different cases being tried in

```
 1   three different jurisdictions or possibly two

 2   jurisdictions or possibly one jurisdiction.  We're

 3   looking at the difference between one and three.

 4             And, Your Honor, we recognize that.  We just

 5   feel like the other factors outweigh that judicial

 6   economy factor.

 7             THE COURT:  But you recognize there is a

 8   judicial economy factor to be considered?

 9             MS. WRIGHT:  With the -- yeah, with two

10   other cases pending.  We would submit it's not as -- as

11   significant as some of the other cases that have been

12   heard in the past where there are 15 or 20 Defendants

13   wanting to transfer to that many jurisdictions.  There's

14   only three pending here, and one of the other ones does

15   have a motion to transfer pending.

16             THE COURT:  All right.  Also, I want you to

17   tell me about your view or Yahoo's view with regard to

18   the nature of the Plaintiff's contacts with this

19   Defendant.  Clearly, your briefing takes the position

20   that the Plaintiff's contacts with the Eastern District

21   are ephemeral, at best, and imaginary, perhaps, at

22   worst.

23             Obviously, Portal Technologies takes a very

24   opposite view in their briefing.  Tell me why Yahoo

25   takes its position, and what supports that position.
```

```
 1              MS. WRIGHT:  We recognize that they do have
 2    a -- an office in the Eastern District of Texas, and
 3    their response did provide some evidence that was not
 4    known before in terms of how long it has been there and
 5    exactly who works there and that sort of thing.
 6              THE COURT:  So the contacts are less
 7    ephemeral than you originally thought?
 8              MS. WRIGHT:  We are -- we're not alleging
 9    that this is a fallacy that they've created.
10              THE COURT:  Okay.
11              MS. WRIGHT:  We are saying that they -- they
12    do have an office here.  There are apparently some
13    documents there in the office in Frisco.  We had asked
14    if we could send a paralegal over to look at those
15    documents to see what they were and perhaps make some
16    copies.
17              Portal declined to allow us to do that prior
18    to the date where that would be allowed underneath the
19    discovery order, the docket control order, so we don't
20    know what those documents are.  We don't dispute that
21    they're obviously -- probably have some relevance, but
22    we don't think the presence of these documents in the
23    Eastern District of Texas outweighs the convenience of
24    actual witnesses that will be having to travel or not,
25    or those witnesses in the Northern District of
```

1    California would not have to travel at all if the case

2    was transferred there, and the other convenience

3    factors, we just don't feel that that -- that presence

4    of the documents in the district outweighs those other

5    factors.

6                THE COURT:  All right.  What other points

7    would you care to make?

8                MS. WRIGHT:  I would like to speak to the

9    next factor being the availability of compulsory

10   process.  As I've said, we do have some witnesses in the

11   Northern District of California, so they would obviously

12   be subject to that there.  Portal has claimed that there

13   are some witnesses in Montana that will voluntarily

14   appear in Texas, and they want that to be considered as

15   part of this factor.

16               THE COURT:  That includes the people you

17   were talking about earlier, doesn't it?

18               MS. WRIGHT:  Yes, sir.

19               THE COURT:  The inventor?

20               MS. WRIGHT:  The inventor and the other

21   folks involved in the patent.

22               THE COURT:  Okay.

23               MS. WRIGHT:  Judge Craven held in the

24   E. Droplets -- or the Droplets v. E*Trade case back in

25   March of this year, and that's 2:11-CV -- CV-255,

1   Docket No. 99, that a witness' apparent agreement to

2   voluntary -- voluntarily appear in the Eastern District

3   cannot be considered subject to the subpoena power.   So

4   even though they claim that they are willing to

5   volunteer here, that cannot be factored in for this

6   element.

7             So we have two Yahoo witnesses.   One of the

8   other named parties with knowledge is the attorney that

9   prosecuted the case.   Mr. Aronson, I believe it is, and

10  he is in Hayward, California, which is right outside of

11  Oakland, which is in the Northern District of Texas, and

12  he's identified --

13            THE COURT:   Northern District of California.

14            MS. WRIGHT:   I'm sorry, Northern District of

15  California.   And he's identified in -- in Portal's

16  disclosures, as well as Yahoo's disclosures as a person

17  with knowledge.

18            So, basically, there are five United States

19  residents who have been identified collectively in the

20  disclosures excluding Plaintiff's trial counsel, and

21  three of those are in the Northern District of

22  California and are, therefore, subject to compulsory

23  process there.

24            THE COURT:   And you would agree with me that

25  there's no compulsory process from either of you with

1   regard to India?

2            MS. WRIGHT:  Correct, although those folks

3   do travel periodically as part of their work.  I don't

4   know that that necessarily factors into the compulsory

5   process.

6            THE COURT:  If they're going to agree to

7   travel from India, I think we've got to count people

8   that agree to travel from Montana.

9            MS. WRIGHT:  Correct.

10            THE COURT:  Good for the goose; good for the

11   gander.

12            What else?

13            MS. WRIGHT:  I'd like to address Portal's

14   claim with regard to the other private interest factors

15   with regard to the delay that might occur.  Under

16   Horseshoe Entertainment, a delay that is relevant for

17   consideration here is only recognized in rare and

18   special circumstances, and they must be established by

19   clear and convincing evidence, and we would submit that

20   that has not been met here.

21            Generally, when the delay is actually a

22   factor that weighs against transfer, it's because the

23   motion to transfer has been filed late in the -- in the

24   game, and that's not the situation here.  That is our --

25   it was our initial pleading was our motion to transfer.

1    So we don't feel like that argument should carry the

2    day.

3              And we've already addressed the -- the --

4    their other factor, and the other factors was the Court

5    resources, which you've already addressed.

6              The remaining factor is the localized

7    interest, and Portal's position, from what I can

8    understand, is that because the technology is accessible

9    in the Eastern District, that the Eastern District has

10   an interest here, and that is just simply not accurate.

11   That's under the law, under the great weight of the case

12   law, if it's accessible here just as much as anywhere

13   else, that does not convey a localized interest any more

14   so than anywhere else, and --

15             THE COURT:  Does it defeat a localized

16   interest?

17             MS. WRIGHT:  It doesn't defeat it, but it

18   doesn't outweigh Yahoo's interest in the Northern

19   District of California.  In Network Protection Sciences

20   versus Juniper, that was out of your court, there

21   were -- the -- the transfer district, it was held, had a

22   greater interest than the Plaintiff who had an -- who

23   had an office in the Eastern District of Texas, but it

24   was small, and it was fairly recent in their operations,

25   which is similar to what we have here.  And the Court

```
 1    held that the Defendant's headquarters in the transfer

 2    district outweighed that because they developed the

 3    allegedly infringing products there.  They employed

 4    thousands of employees, and those employees resided

 5    there.  And all those same factors are here in this

 6    case.  That's -- the cite to that case is 2012 Lexis

 7    7575 from January of this year.

 8                THE COURT:  All right.

 9                MS. WRIGHT:  The -- Portal also speaks in

10    their -- I believe their surreply to Yahoo's presence in

11    the Eastern District of Texas, and I just wanted to

12    point out that in our briefing, we did mention a data

13    center in Dallas and some other connections to Texas,

14    not the Eastern District, but to Texas, those were

15    included in the briefing for the purpose of the motion

16    to dismiss to talk about venue and contacts.  Those

17    offices do not have anything to do with the accused

18    technology, so they should not be factored in at all in

19    the motion to transfer analysis.

20                THE COURT:  What else?

21                MS. WRIGHT:  I believe that's all, Your

22    Honor, other than I would point out that the

23    hundred-mile rule, they tried to discount it in their

24    pleadings.  I think it's clear that it does apply.  One

25    of the Montana witnesses is 400 and some odd miles
```

closer to California.  The other one is 655 miles closer

to California.  Their briefing indicates that their

distance is no more relevant than the folks in India,

and I think under the hundred-mile rule under the Fifth

Circuit, you have to consider those distances, and those

do weigh in favor of transfer.

THE COURT:  Well, I hear your argument.

We're talking about very long distances from India, and

not insignificant distance from Montana.  It appears

that differences may exceed the hundred-mile limit, but

they don't seem to be proportionately distances on a

proportional basis.  I mean, if you're coming from India

coming to San Francisco and coming to East Texas, it's a

long trip no matter how you do it or where you -- where

you end up.

MS. WRIGHT:  And we agree with that, and --

and we agree that the case law does discount when you're

traveling internationally, but the hundred-mile rule

does specifically apply to those witnesses in Montana,

and I believe in their briefing, they indicate that it

should be -- those witnesses should be discounted just

like the international folks.

THE COURT:  But, I mean, you would agree

with me, if you're in Montana and you're going to San

Francisco and you're in Montana and you're coming to

1    Marshall, Texas, you're going to take the better part of

2    a day to go either way, and it's not that you've got to

3    take two days to go one place and one day to go to the

4    other.  Neither one is an insignificant trip.  Either

5    one is probably going to consume a majority of a day's

6    time, and you can probably get from Montana to either

7    place in a day's time.

8            So the distances are different, but the --

9    the actual underlying convenience or inconvenience is

10   not the same as if you'd have to take two days to make

11   one trip and one day to make the other or one trip was

12   an hour-and-a-half flight and the other was an eight- or

13   nine-hour flight.  There are differences.  Clearly the

14   Court recognizes that, but it doesn't seem that there

15   are just huge variances in those variances when they're

16   compared.

17           MS. WRIGHT:  I don't think that they're --

18   definitely it's not going to take you two days to get

19   here from Montana unless you're driving, but I do think

20   if you look at our exhibits that show the convenience of

21   the availability of flights, I do think you can probably

22   get from Montana to California a whole lot quicker than

23   you can to Marshall, Texas.  They have direct flights,

24   and it's a shorter flight.

25           THE COURT:  And, again, we're talking about

1   two people?

2                MS. WRIGHT:  Two to three.  They named two

3   in their initial disclosures.

4                THE COURT:  Okay.  We're not talking about

5   10 or 12?

6                MS. WRIGHT:  No, we've only got seven people

7   named at this point, so we're not dealing with a lot.

8                THE COURT:  All right.  All right.  Thank

9   you, Ms. Wright.

10                MS. WRIGHT:  Thank you.

11                THE COURT:  I'll hear a response from Portal

12   Technologies.

13                MR. SCHLATHER:  May it please the Court.

14   Steve Schlather for Portal.  Good morning, Your Honor.

15                THE COURT:  Good morning.

16                MR. SCHLATHER:  As an initial matter, I

17   think that it should be mentioned that Yahoo bears the

18   burden here of showing that the Northern District of

19   California is a clearly more convenient forum for this

20   case, and that's a significant burden, and Yahoo has --

21   has failed to meet it here.

22                Portal resides in this district.  I don't

23   think that's disputed at this point.  There is maybe

24   some -- some argument about that in the briefing

25   initially, but --

```
 1              THE COURT:  No, it doesn't sound like it's
 2   disputed any further.
 3              MR. SCHLATHER:  Correct.  Including Portal's
 4   CEO is resident in its Frisco offices and has been
 5   there -- Portal was formed in April of 2010, so more
 6   than a year before the case was filed.  So it's
 7   definitely not an artifact of litigation or an
 8   ephemeral --
 9              THE COURT:  And I don't have the disclosures
10   in front of me.  Do you anticipate the CEO to be a live
11   witness at trial?
12              MR. SCHLATHER:  He wasn't listed.
13              THE COURT:  Do you expect him to be a
14   corporate representative present at trial?
15              MR. SCHLATHER:  He may be.  I don't think
16   we've -- we've made that decision yet.
17              THE COURT:  Okay.
18              MR. SCHLATHER:  Just jumping straight --
19   straight into the -- the factors, we -- we do disagree
20   with -- with Yahoo on the -- the Court congestion
21   factor.  I think originally that was neutral, early on.
22   The time to trial in this district versus Northern
23   California was approximately the same.  We've now been
24   set for trial in -- in 2013.  If we get transferred to
25   Northern California, we go to the back of the line and
```

1   we're still looking at two years for a trial date,

2   according to the statistics.  So at a minimum, it looks

3   like we'd be delayed at least a year as a result of a

4   transfer at this point.

5                Conflicts of laws and the Court's

6   familiarity with -- with patent law, I think both of

7   those are neutral, and we agree on that.

8                The -- the other public factor, just to

9   finish up the -- the four public factors, was the local

10  interest.  Again, Portal is located in this district,

11  and that gives this Court a strong interest in hearing

12  this case.  Yahoo does have a presence in the state,

13  albeit just outside the district in Dallas, and I

14  believe there's also some facilities in Tarrant County,

15  which I believe is down near Austin.  So they have a --

16                THE COURT:  No, Tarrant County is Fort

17  Worth.

18                MR. SCHLATHER:  Fort Worth.  My apologies.

19  I need to look at my --

20                THE COURT:  That's all right.  You've not

21  contended that those facilities directly relate to the

22  patented technology?

23                MR. SCHLATHER:  I don't -- I don't think we

24  do.  We don't contend that.

25                THE COURT:  Okay.

1          MR. SCHLATHER:  Turning to the private

2    factors, access to proof, Portal does have about 136

3    boxes of -- of documents in its Frisco office, and those

4    are substantially all of the documents of the company.

5    They're -- they're hard copy documents, so they're not

6    easily transportable, versus Yahoo's documents, which

7    according to its briefing, are primarily electronic in

8    nature, presumably are accessible, including in this

9    district, but also at least in its facilities in Dallas,

10   which is not -- not far from here.

11          The -- the witnesses, I think we've heard a

12   discussion already this morning, the folks in India,

13   which -- who appear to be the more important witnesses

14   in terms of the infringing technology, are located in

15   India.  If they have to get on a plane to come to the

16   U.S., whether it's San Francisco or whether it's

17   Marshall, I think they're equally inconvenienced at that

18   point.  It doesn't sound like Yahoo disagrees with that.

19   For the folks in Montana, I think the analysis is

20   similar that we don't disagree that the hundred-mile

21   rule applies, but if you're in Montana and you're having

22   to get on a plane to travel, it's equally inconvenient

23   to go to San Francisco as it is to -- to come down to

24   Marshall.

25          With regard to compulsory process, it sounds

1   like there may be only one witness, the prosecution

2   counsel, that really needs to be considered here, and

3   that -- that gentleman is in the -- in the Northern

4   District.  Yahoo cites some of its own witnesses, but I

5   think the case law makes clear that when we're

6   considering compulsory process, we primarily look at --

7            THE COURT:  Third parties.

8            MR. SCHLATHER:  -- third parties, right, or

9   nonparties, correct, not -- not party witnesses.  The --

10  the inventor and other witnesses in Montana have agreed

11  to appear in this Court, if necessary.

12           THE COURT:  What's your response to

13  Ms. Wright's argument that that agreement really isn't a

14  factor, it could be easily withdrawn at some future date

15  and the Court shouldn't consider it in its venue

16  analysis?

17           MR. SCHLATHER:  Well, I think in that case,

18  it makes that factor neutral at worst.  If we do count

19  it, that factor weighs in favor -- or weighs against

20  transfer.  If we do discount it, then -- then it makes

21  that factor neutral.  So in a worse case scenario, we're

22  looking at the factor of compulsory process as

23  essentially -- as essentially neutral.

24           The -- the cost of attendance, again,

25  there's not -- when you're talking about flying from

1    Montana or flying folks in from India, the additional

2    expense is not significant if you're going to California

3    or you're coming to Texas.

4              THE COURT:  Well, I can tell you, having

5    been at an IP conference out there the last 30 days, the

6    cost of food and hotel rooms is significantly higher in

7    Northern California than it is in East Texas.

8              MR. SCHLATHER:  Fair enough.  I don't

9    disagree with that.

10             THE COURT:  We may argue about how much it

11   costs to get there, but once you're there, the cost of

12   staying there is significantly higher.

13             MR. SCHLATHER:  Very well.  With regard to

14   other considerations, this case has progressed

15   significantly since the briefing was filed, including,

16   as the Court is aware, we've had a scheduling

17   conference, we've got trial dates and Markman dates.

18   Portal has served its infringement contentions,

19   discovery has begun.  You heard Ms. Wright mention

20   exchange of initial disclosures.  Yahoo's invalidity

21   contentions are due in mid-July.  I think if the -- if

22   the case is transferred at this stage, essentially, they

23   get a significant amount of extra time to prepare those

24   invalidity contentions versus the schedule that we're on

25   now.  I think that -- that prejudices Portal to a large

1   extent.

2              The last point I'll touch on is the judicial

3   economy.  We've got two other cases in this Court.  I'm

4   not aware that -- that any of the other Defendants have

5   filed motions to transfer.  Regardless, I think judicial

6   economy weighs in favor of keeping those cases together.

7   As it stands now, they're on virtually identical

8   schedules.  The Markman hearings are scheduled for the

9   same day, and they're set for trial the same day.

10             THE COURT:  I gather Portal has no pending

11  cases regarding this patent or this technology in the

12  Northern District of California?

13             MR. SCHLATHER:  We do not.

14             THE COURT:  Okay.

15             MR. SCHLATHER:  All -- all pending cases are

16  here in this court, Your Honor.

17             THE COURT:  All right.

18             MR. SCHLATHER:  So I think splitting it up,

19  in addition to at least doubling the judicial workload,

20  you now have two Courts hearing what amounts to the same

21  case or at least very similar cases.  You also have the

22  possibility of conflicting results, especially at the --

23  at the claim construction stage where you have two

24  separate Courts construing claims in the same patent.

25             THE COURT:  Well, you not only have the

1    possibility of inconsistent rulings between Courts both

2    as to claim construction, infringement, and invalidity,

3    but there are significant economies that can be achieved

4    by, though their separate cases, developing those cases

5    on a concurrent basis and moving toward both Markman and

6    trial, but the Court recognizes that's not the only

7    factor, but it is one that does make sense to the Court.

8              MR. SCHLATHER:  Portal agrees, and I think

9    the Court recognized that in its scheduling orders

10   where, as I mentioned, the cases are moving forward

11   essentially in parallel.

12             THE COURT:  What else, Counsel?

13             MR. SCHLATHER:  That's all I have, Your

14   Honor.  Thank you.

15             THE COURT:  All right.  Ms. Wright, any

16   response?

17             MS. WRIGHT:  Just briefly, Your Honor.

18             I would just submit that in terms of the

19   delay that will occur potentially if this is

20   transferred, I don't argue with the fact that this case

21   is moving quickly here, but I don't think there has been

22   a whole lot of delay between the time that we filed our

23   motion and the time that we've had this hearing.  And

24   if -- if we're going to be able to prevent transfer

25   based upon the fact that there may be some delay in

1    transferring, I don't think you're ever going to get

2    transferred because we know that the Eastern District of

3    Texas moves quickly.

4            I don't -- there have not been any

5    significant delays in this case.  When it was filed, we

6    answered, we had our scheduling conference, we have

7    briefed this issue, you granted a hearing on it, we're

8    here today.  I don't know that we could have moved any

9    quicker to get to this point.  So I don't think there

10   has been anything at all that's significant.  So I just

11   don't think that --

12           THE COURT:  Well, I don't think -- I don't

13   think Portal is talking about what's happened from

14   filing to today as much as they are raising the issue

15   that if transfer is granted, their 2013 trial date is

16   going to be at least 2014.

17           MS. WRIGHT:  Well, and I don't -- I don't

18   know that we can say one way or the other that that's

19   the case.  I can say that it probably won't go to trial

20   on the date that it's scheduled.  But my point is that

21   this is a factor that needs to be considered, and if

22   that alone is going to prevent delay, then we're never

23   going to transfer out of the Eastern District of Texas.

24           THE COURT:  Well, I can tell you that the

25   Court's analysis is not going to be where any one factor

1    is going to be dispositive.  All the factors are going

2    to have to be considered and weighed, and there are

3    appropriate weighing for or against transfer or being

4    neutral is going to have to be taken into account

5    collectively.

6              To my understanding, the only threshold

7    issue is one you both agree on, that this case could

8    have been in the Northern District of California.  After

9    we cross that threshold, no single factor is

10   dispositive.

11             MS. WRIGHT:  Correct, Your Honor.

12             THE COURT:  Although, if a delay is going

13   to occur, that may be a factor to be considered, but

14   we're -- we're not going to deny -- if the -- if the

15   motion to transfer is denied, I can assure you it won't

16   be on the single basis of there's a delay in California.

17             MS. WRIGHT:  Okay.  And the only other

18   thing, and I may be beating India to death, but we do

19   agree that India is a long way away and that travel is

20   going to take a long time.  But that's -- there are two

21   different issues to look at there with India, and one of

22   them is the convenience, and I don't want to leave

23   without making the point that it is more convenient for

24   the India witnesses to travel to California than it is

25   to Texas, basically because they do that on a routine --

1  maybe not a routine basis, but they do it several times

2  a year, and there are offices there where they can work,

3  so the disruption of their life is less in the Northern

4  District of California than it is in Texas, and although

5  that doesn't weigh into the cost factor, that does weigh

6  into the first factor for the convenience of the

7  witnesses.

8          THE COURT:  But those witnesses are Yahoo

9  employees, they're not third parties who are not parties

10  in this litigation?

11          MS. WRIGHT:  Correct.

12          THE COURT:  Everyone smiled when I made the

13  comment about the cost being present and being housed

14  and fed in one venue as opposed to the other.  But don't

15  you really think that is a -- a material difference?

16  You're talking about a Markman hearing at which counsel

17  are going to be present, if not corporate

18  representatives, you're talking about a trial that will

19  probably at least be a week long with multiple witnesses

20  and experts, and over the course of the entire case,

21  does Yahoo think that the pretty much in -- undisputed

22  differences in the cost of housing and food across the

23  board is -- is laughable, or do you really think that

24  really is a factor, not clearly a dispositive factor,

25  but a factor to be considered?

```
1              MS. WRIGHT:  Well, I -- I do think that cost
2    overall in general is a factor.
3              THE COURT:  I mean, as I read the cases,
4    it's not just convenience, it's also cost to the
5    parties.
6              MS. WRIGHT:  I think they're two separate
7    factors, and I think they both have to be considered.
8    I've never seen an opinion where actual meal costs and
9    hotel costs were considered.  That doesn't mean that
10   there's one out there.  Usually the ones I see are
11   dealing with distance and -- and actual travel costs.
12             I do think it's a legitimate issue.  You
13   have to eat, and you have to have somewhere to stay.
14   For the witnesses that reside in the Northern District,
15   obviously, that's not an issue.  Again, we're dealing
16   with some Yahoo witnesses and the attorney who
17   prosecuted the patent.  Again, for the folks that live
18   in Montana, the Eastern District of Texas might be
19   really expensive.  I don't know.
20             THE COURT:  But, I mean, unless Yahoo owns a
21   hotel, even Yahoo's own employees from India are going
22   to have to be housed and fed when they're either there
23   or here in relation to this case.
24             MS. WRIGHT:  Correct, they will be.
25             THE COURT:  Okay.  Anything further in
```

1   response?

2           MS. WRIGHT:  No, sir.

3           THE COURT:  All right.  Any final comments

4   from the Plaintiff?

5           MR. SCHLATHER:  Nothing further, Your Honor.

6           THE COURT:  All right.  Thank you, Counsel.

7           Court will certainly take this under

8   advisement and try to get you a ruling as soon as

9   possible.

10          I think it would be advisable while I have

11  the benefit of you here to take up the issue on the

12  disputed protective order.  I assume you're both

13  prepared to speak to that.

14          MS. WRIGHT:  Yes, Your Honor.

15          MR. SCHLATHER:  Yes, Your Honor.

16          THE COURT:  Okay.  It clearly relates to

17  the source code issues.  I don't know -- I don't know,

18  Ms. Wright, if you're aware.  I had a hearing, I believe

19  it was last week, in which Ms. Doan appeared for Yahoo

20  with regard to a disputed protective order.  And I --

21          MS. WRIGHT:  In the Princeton matter, Your

22  Honor?

23          THE COURT:  Princeton, yes.

24          MS. WRIGHT:  Yes, I am aware of that.

25          THE COURT:  Okay.  And I would expect that

1    many of my rulings in that matter with regard to source

2    code are going to be similar in this.  I don't know if

3    that helps you narrow with opposing counsel where you

4    are in conflict with each other or not, and I'm not --

5    if you've not had a chance and if you think it would be

6    beneficial, I'm not opposed to a 10 or 15 minute recess

7    for you-all to talk further if you think it would narrow

8    these issues.  If -- if you don't, then let's tee them

9    up and -- and see if we can get them before me and let

10   me give you a ruling.

11              MS. WRIGHT:  I'm -- I'm more than willing to

12   visit.  We haven't visited since our disputed --

13              THE COURT:  Well, since the -- you know,

14   since the Princeton was so fresh and it was on much the

15   same topics, I think it might be a benefit.

16              Why don't we have about a 15-minute recess.

17   You two meet and confer about this protective order, and

18   then I'll come back in and see about what remaining

19   issues you need me to decide for you.

20              We'll be in recess for the next 15 minutes.

21              COURT SECURITY OFFICER:  All rise.

22              (Recess.)

23              COURT SECURITY OFFICER:  All rise.

24              THE COURT:  Be seated, please.

25              All right.  We'll return to the hearing on

1   Portal Technologies versus Yahoo.  We had recessed to

2   give counsel an opportunity to discuss their varying

3   positions on the source code section of the protective

4   order.

5           Do we -- do you have anything to announce?

6   Have we narrowed the issues?  Have we resolved

7   everything?  Have you agreed on nothing?  Tell me where

8   we are.

9           MR. DAVIS:  Your Honor, we -- I believe we

10  have narrowed the issues.  We're down to an issue of

11  source code printouts and whether or not source code

12  printouts -- whether Portal needs to provide copies of

13  those printouts to the Defendants as they are printed or

14  as they're taken from -- from the source code review

15  room.  So I think that's the one outstanding issue.

16  Otherwise --

17          THE COURT:  Well, what I did in the

18  Princeton case, Mr. Davis, was I provided that Portal

19  would wait to leave with their copies from the source

20  code room until such time as the other party could make

21  a copy and the documents could all be Bates stamped.  So

22  that when -- when Portal leaves, they leave with Yahoo

23  having the -- having the same thing with the same Bates

24  number on it that they have.

25          MR. DAVIS:  Your Honor, the -- our concern

1    with that is that allowing Yahoo to have exact copies of

2    the source code that we printed invades upon the work

3    product privilege in that they get to see what we think

4    is significant in the code, what we think -- what we

5    took from there to go -- you know, to go review or -- or

6    incorporated into our analysis and expert reports.

7              Now, obviously, some portions of those

8    printouts may be included in expert reports, but -- but

9    concern is that it does invade upon work product

10   privilege.

11             One suggestion we had is if the concern is

12   just keeping track of what's been printed, that an exact

13   copy of our printouts be kept in some sort of a sealed

14   envelope and if an issue arises, they would have a copy

15   of it.  But if the issue is we want to see what you

16   printed to make a determination as to whether or not

17   it's relevant or whether or not you're taking too much

18   or too little --

19             THE COURT:  Are there -- are there

20   limitations in this proposed protective order as to the

21   number of pages to be produced or copied?

22             MR. DAVIS:  I believe the limitation is

23   reasonableness.

24             MS. WRIGHT:  We -- in our proposal, there

25   was a limitation, no more than 15 consecutive or 500

1  total, but we're willing to agree --

2          THE COURT:  Yeah, and I struck that down in

3  the last hearing.

4          MS. WRIGHT:  Right.  And -- and we

5  appreciate their position, but we just really -- our big

6  concern is them leaving without us knowing what they

7  have without an opportunity to resolve it before

8  something really important gets out the door, and

9  because once it's gone, we're in --

10          THE COURT:  Well, if Mr. Smith will put down

11  his pen, and off the record.

12              (Off-the-record discussion.)

13          THE COURT:  Back on the record.  Source code

14  is a serious concern for any producing party, and

15  it's -- it's my -- it's my belief that though there

16  might be a possibility of tipping your hand, the need to

17  provide as much protection as reasonably possible to the

18  underlying genesis of the product outweighs that.

19          So I think Yahoo's entitled to have a copy

20  of what you take with you.  However, you don't need to

21  be under any unreasonable or arbitrary limitations on

22  what you take, and if you choose to copy or take

23  portions that are simply to create a lack of clarity as

24  to what you may be focused on, that's certainly part of

25  your strategy that you can employ.

1          MR. DAVIS:  Okay.

2          THE COURT:  But I think they've got to bend

3  on the amount you can take, and you've got to bend on

4  the fact that they need a record of what left there.  So

5  if that's an issue you can't agree on, that's going to

6  be my ruling on it.

7          MS. WRIGHT:  Okay.

8          THE COURT:  Do you have other issues that

9  you're not able to agree on?

10          MS. WRIGHT:  I think we've agreed on the

11  provision that you had in the Princeton one where they

12  can't take documents that can record with the exception

13  of cell phones, and I think we've agreed on that.

14          MR. DAVIS:  We have agreed on that.  I

15  believe that's the only outstanding issue, Your Honor.

16  Otherwise, we'd be able to get you an agreed protective

17  order.

18          THE COURT:  That would be the next step,

19  then, Mr. Davis, is for both of you to confer and submit

20  a joint proposed protective order, and if in that

21  process you find there is some remaining area of

22  disagreement, let my clerks know and we'll take it up,

23  but assuming there's not, then I'll be glad to enter

24  what you-all can agree to and submit jointly.

25          We've taken the motion to transfer under

1    advisement, and we've dealt with the issues on the

2    protective order.  Is there anything else before the

3    Court that Counsel's aware of that we've not taken up?

4              MR. DAVIS:  Nothing from the Plaintiff, Your

5    Honor.

6              MS. WRIGHT:  No, Your Honor.

7              THE COURT:  All right.  Then with that,

8    you're excused and this hearing is at a conclusion.

9              Thank you, Counsel.

10             COURT SECURITY OFFICER:  All rise.

11             (Recess.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATION

 2

 3             I HEREBY CERTIFY that the foregoing is a

 4   true and correct transcript from the stenographic notes

 5   of the proceedings in the above-entitled matter to the

 6   best of my ability.

 7

 8

 9
     SHELLY HOLMES                        Date
10   Deputy Official Reporter
     State of Texas No.: 7804
11   Expiration Date: 12/31/12

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```